<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| ROCKWELL MALAVE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TATA CONSULTANCY SERVICES LIMITED et al., <br><br> Defendants. |

Case No. 2:23-cv-22529 (BRM) (JRA)

**OPINION**

**TEMPORARILY FILED UNDER SEAL**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Tata Consultancy Services Limited's[1] ("TCS") Motion to Compel Arbitration and Stay the Proceedings (the "Motion") (ECF No. 31) related to Plaintiff Rockwell Malave's ("Plaintiff") Complaint (ECF No. 1). Plaintiff opposes the Motion. (ECF No. 43.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, TCS's Motion is **DENIED**.

**I.    BACKGROUND**

In his Complaint filed on November 20, 2023, Plaintiff alleges he is a resident of New Jersey who was employed by TCS[2] in Edison, New Jersey (the "Edison Office") from around

---

[1] On October 11, 2024, a second, related Defendant, Tata American International Corporation ("TAIC"), was dismissed from these proceedings without prejudice, pursuant to a stipulation by the parties. (ECF No. 30.)

[2] Plaintiff alleges diversity jurisdiction exists because TCS is headquartered in Mumbai, India. (ECF No. 1 ¶¶ 3–4.) Because Plaintiff also alleges venue is proper because TCS "is headquartered domestically in Edison, New Jersey" (*Id.* ¶ 5), this Court ordered Plaintiff to clarify its position on

September 2014 to September 20, 2023, at which point he was terminated. (ECF No. 1 ¶¶ 1, 6–8.) On September 20, 2023, Plaintiff alleges he received a phone call from an HR employee for TCS informing him he would be terminated that day, and later received an email from TCS's head of human resources. (*Id.* ¶¶ 70–71.)

Plaintiff alleges this termination violated the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, N.J. Stat. Ann. § 34:21-1–7 (the "NJ WARN Act"), in that TCS failed to provide the timely notices and severance pay it prescribes. (*Id.* ¶ 1.) In short, Plaintiff contends the NJ WARN Act requires any employer with 100 or more employees to provide a "90-day pre-layoff notice" before terminating 50 or more employees during a 30-day period, as well as to notify various State of New Jersey officials and to provide a certain amount of severance pay. (*Id.* ¶¶ 77–83.) Plaintiff seeks to represent a class of similarly situated former employees he alleges were also terminated in violation of the NJ WARN Act, under Federal Rule of Civil Procedure 23 and its New Jersey procedure equivalent. (*Id.* ¶¶ 2, 59.) Plaintiff seeks severance pay for the mandatory four weeks he alleges the NJ WARN Act requires, additional weeks of severance pay based on his and the putative class members' years of work for TCS, and attorneys' fees and other costs related to this action. (*Id.* ¶ 86.)

---

TCS's citizenship and the existence of diversity subject matter jurisdiction. (ECF No. 59.) On April 4, 2025, Plaintiff submitted a letter to the Court citing the Supreme Court's precedent in *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010), that "[a] corporation's 'nerve center,' usually its main headquarters, is a single place [for purposes of jurisdictional analysis]," and that, in the case of TCS, its "nerve center" and principal place of business is Mumbai, India. (ECF No. 60 at 1–2.) Plaintiff also noted TCS's corporate disclosure statement and answer align with this view of the company's structure, as does a declaration TCS submitted in another case in federal district court. (*Id.* at 2–3.) Based on this submission, in conjunction with the Complaint, the Court is satisfied Plaintiff has met his burden to sufficiently allege the existence of diversity jurisdiction at this juncture. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court.").

On February 9, 2024, TCS and then-Defendant TAIC filed an Answer to the Complaint, raising sixteen affirmative and other defenses, including that Plaintiff and the putative class are subject to mandatory arbitration agreements. (ECF No. 16 ¶ 101.) The parties submitted a joint discovery plan on April 25, 2024. (ECF No. 19.) Following an exchange of initial discovery productions between the parties (ECF No. 27), the parties stipulated to the dismissal of TAIC without prejudice on October 11, 2024 (ECF No. 30). TCS filed the Motion currently before the Court that same day, to which it attached a copy of a confidential separation agreement (the "Agreement") signed by Plaintiff.[3] (ECF Nos. 32–33.)

As relevant to the Motion, the Agreement contains a "General Release of All Claims," which states Plaintiff "knowingly and voluntarily release[s] and forever discharge[s] [TCS] from any and all legally waivable claims, causes of actions, expenses including attorneys' fees, and liability claims of any kind" and contains a non-exhaustive list of included state, federal, and common law claims. (ECF No. 31-4 ¶ 5(A).) At Paragraph 13, the Agreement contains a "Dispute Resolution" provision, which states "[t]he Parties agree that . . . any surviving claims regarding your employment with or separation from the Company shall be resolved by binding arbitration

---

[3] Through a declaration by counsel (ECF No. 31-3) and an affidavit from its Head of HR Compliance and Employee Relations Jeevak Sharma ("Sharma") (ECF No. 45-1), TCS states it discovered the executed Agreement sometime after August 5, 2024, while conducting a review of "nearly 200 severance agreements" of employees terminated around the time of Plaintiff's termination (ECF No. 31-3 ¶¶ 15–22). Upon this discovery, TCS confirmed Plaintiff received a severance payment pursuant to the Agreement. (*Id.* ¶ 21.) Sharma states he reviewed records related to Plaintiff's employment around November 2023 for an arbitration agreement but neglected to check the Agreement for this language because he "frankly did not know that the severance agreements contained a binding arbitration clause." (ECF No. 45-1 ¶¶ 6–7.) Sharma explains he assisted in August 2024 with collecting severance agreements for those employees terminated at the same time as Plaintiff but did not learn they contained an arbitration clause until informed by counsel. (*Id.* ¶¶ 8–11.) Sharma also attests he was a recipient of the email containing Plaintiff's executed Agreement in September 2023, but he states he did not recall reviewing it among the many severance-related emails he received around that time. (*Id.* ¶¶ 12–15.)

between the Parties." (*Id.* ¶ 13.) Additionally, the Agreement includes a section entitled "Governing Law and Interpretation," which states "[t]his Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of New York without regard to its conflict of laws provision." (*Id.* ¶ 15.)

Plaintiff filed his Opposition to the Motion on November 5, 2024 (ECF No. 41), and a corrected brief on November 7, 2024 (ECF No. 43). On November 12, 2024, TCS filed a reply brief. (ECF No. 45.) Upon leave of this Court (ECF No. 48), Plaintiff filed a sur-reply on November 21, 2024 (ECF No. 49), and TCS then requested and received leave to file its own response (ECF Nos. 53, 57), which it did on December 10, 2024 (ECF No. 58).

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides: "A written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not

more so.'" *Morgan*, 596 U.S. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418.

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-02287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, Civ. A. No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265). For example, where

employees are properly notified of an arbitration agreement and where they would assent through inaction unless they filled out an opt-out form, "failure to opt out of the arbitration through inaction [is] a proper method to assent." *Id.* at *4 (collecting cases).

In applying this two-step analysis, courts may apply either the Rule 12(b)(6) motion to dismiss standard or the Rule 56(a) summary judgment standard. *Singh v. Uber Tech. Inc.*, 939 F.3d 210, 217–18 (3d Cir. 2019) ("[T]he two options [for reviewing a motion to compel arbitration] are the motion to dismiss standard under Rule 12(b)(6) and the summary judgment standard under Rule 56."). The key factor in determining which standard to apply is "whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Id.* (citing *Guidotti*, 716 F.3d at 774–76). Determining which standard to apply is crucial because the two standards differ significantly.

Under the motion to dismiss standard, a "defendant need only shoulder a single burden—to show that the complaint fails to state a claim." *Guidotti*, 716 F.3d at 772 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 479 (E. D. Pa. 2011)). To defeat this motion, the opposing party "can rely only on the complaint and selected other documents." *Id.* at 773 (quoting *Somerset*, 832 F. Supp. 2d at 479).

Alternatively, under the summary judgment standard "the moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case." *Id.* If the burden is met, then "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[4] *Id.* (citation and quotation

---

[4] A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing

marks omitted). To defeat a summary judgment motion, the opposing party "has significantly more material at his disposal than when opposing a motion to dismiss, given that he may cite evidence gained during discovery." *Id.*

## III.    DECISION

TCS argues the Court should stay this matter and compel arbitration of Plaintiff's individual NJ WARN Act claim, pursuant to the FAA, because the Agreement signed by Plaintiff includes "an unambiguous 'Dispute Resolution' clause" that sends any employment or separation-related claims to binding arbitration. (ECF No. 31-2 at 1.) While TCS notes the Rule 56 summary judgment standard applies, because the Complaint does not disclose the Agreement's existence (nor its Dispute Resolution clause), it asserts there is no dispute of material fact that the Agreement is valid and enforceable, and the Dispute Resolution clause covers any claims under the NJ WARN Act. (*Id.* at 4–8.) TCS also argues it has not waived its right to compel arbitration because it included mandatory arbitration as an affirmative defense and brought the Motion upon locating a signed copy of the Agreement during discovery, after first informing Plaintiff of this discovery and requesting he consent to arbitration. (*Id.* at 8–10.)

Plaintiff refutes both TCS's arguments, insisting TCS fails to establish a valid arbitration agreement exists under New Jersey law on a summary judgment standard, and even if one does

---

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

exist, TCS has waived its right to arbitrate by waiting 11 months to file the Motion. (ECF No. 43 at 3–8, 8–11.)

Because the Complaint makes no mention of the existence of the Agreement, and Plaintiff contests the Agreement contains a valid arbitration clause, the Court must evaluate the Motion under the Rule 56(a) summary judgment standard. *See Guidotti*, 716 F.3d at 776 (determining summary judgment standard applies "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," following limited discovery on the arbitrability issue).

TCS argues the arbitration clause contained in the Agreement "is clearly a valid and binding contract to arbitrate between" the parties, as there was an offer by TCS, acceptance by Plaintiff, and consideration in the form of severance payment. (ECF No. 31-2 at 5–6.) The parties have engaged in limited discovery, and there is no apparent factual dispute about the Agreement contractual status; Plaintiff's argument focuses on the legal sufficiency of the arbitration provision's language under New Jersey law, rather than the existence of a contract. (ECF No. 43 at 3–8.) On this record, the Court may analyze the enforceability of the arbitration provision without ordering further discovery if no other material factual disputes arise. *See Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319–21 (3d Cir. 2024) (clarifying *Guidotti* does not mandate discovery when an agreement to arbitrate is not incorporated into complaint if no factual disputes exist); *Cabrera v. Verizon*, Civ. A. No. 24-7780, 2024 WL 481809, at *3 n.2 (D.N.J. Nov. 18, 2024) ("The Third Circuit has instructed that, even where a summary judgment standard

applies to a motion to compel arbitration, the Court should proceed to rule on the record presented, without need for discovery, if there is no factual dispute.").

### A. Arbitrability of the NJ WARN Act Claim

TCS asserts Plaintiff's claim is subject to arbitration per the Agreement. Arguing there is a presumption of arbitrability unless "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," TCS argues Plaintiff's NJ WARN Act claim falls within the broad language of the Agreement's "Dispute Resolution" section. (ECF No. 31-2 at 6–7 (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986)).) TCS explains that Paragraph 5(A) of the Agreement includes a general release of all claims, which it asserts, per the provision's term, means "Plaintiff knowingly and voluntarily releases 'all legally waivable claims, causes of actions, expenses including attorney fees, and liability claims of any kind[.]'" (*Id.* at 7 (quoting ECF No. 31-4 ¶ 5(A)).) Additionally, TCS asserts the Dispute Resolution section states "[t]he Parties agree that . . . any surviving claims regarding your employment with or separation from the Company shall be resolved by binding arbitration between the Parties." (*Id.* (quoting ECF No. 31-4 ¶ 13) (first alteration in original).) Therefore, while TCS does not concede the NJ WARN Act claim survives the general release and waiver of claims in Paragraph 5(A),[5] it contends such a claim "falls squarely within" the Dispute Resolution section of the Agreement to the extent it was not waived. (*Id.*). Further, TCS argues it would not be a violation of the NJ WARN Act to delegate such claims to arbitration because nothing in the Act's text says otherwise; however, if the NJ WARN Act did contain a provision susceptible to such a construction, TCS asserts it would be preempted by the FAA. (*Id.* at 8 (citing *Antonucci v. Curvature Newco, Inc.*, 270 A.3d 1088,

---

[5] In a footnote, TCS argues "as a matter of law" that the text of the NJ WARN Act does not prohibit waiver through a valid separation agreement, or at least that the issue constitutes "an open question of law," but that the Court need not resolve it in this Motion. (ECF No. 31-2 at 7 n.3).

1096 (N.J. App. Div. 2022); *Kindred Nursing Cntrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 247 (2017)).)

Plaintiff disagrees, arguing the Agreement contains "a patently invalid arbitration provision" under New Jersey law. (ECF No. 43 at 4.) First, Plaintiff asserts Third Circuit law counsels that the presumption of arbitrability does not apply when the question of enforceability turns on state law. (*Id.* at 4 (citing *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, at 519–20 (3d Cir. 2019).) Second, Plaintiff contends New Jersey law requires an arbitration provision indicate the plaintiff is "waiving her statutory right to seek relief in a court of law" or otherwise acknowledge the individual is relinquishing rights associated with bringing a lawsuit, such as a jury trial. (*Id.* at 6–7 (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315 (N.J. 2014)).) Absent "clear and unambiguous language" to that effect, Plaintiff argues New Jersey courts find purported arbitration clauses to be unenforceable. (*Id.* at 7 (quoting *Vill. Courtyard Condo. Ass'n, Inc. v. 68-72 Franklin Place, LLC*, No. A-0176-23, 2024 N.J. Super. Unpub. LEXIS 1184, at *5 (N.J. App. Div. 2024)).) Plaintiff asserts similar language is absent from the Dispute Resolution section of the Agreement. (*Id.* at 4–5.) In addition, Plaintiff points a decision in this District where TCS succeeded in compelling arbitration under New Jersey law based on a contract whose arbitration provision contained a disclaimer acknowledging the plaintiff was giving up the right to "litigate [disputes] before courts or other bodies" and the right "to a jury trial," and thus contends TCS understands how to craft a valid arbitration agreement under New Jersey law and failed to do so here. (*Id.* at 7–8 (quoting *Mahanandigari v. Tata Consultancy Serv.*, Civ. A. No. 16-8746, 2017 U.S. Dist. LEXIS 93739, at *8 (D.N.J. June 19, 2017)).)

For the first time in its reply, TCS asserts Plaintiff's arguments about New Jersey contract law are inapposite because the Governing Law and Interpretation clause of the Agreement

designates the law of New York State as the governing body of law. (ECF No. 45 at 5–6.) Arguing New Jersey courts typically uphold choice-of-law provisions so long as they do not violate public policy, TCS asserts New Jersey courts would apply the Governing Law and Interpretation clause's choice of New York law. (*Id.* at 6.) TCS contends New Jersey law does not require displacing this provision because New York has a "substantial relationship" to the parties that provides a "reasonable basis" for applying New York law, via the presence of TCS's executives and senior staff in the state and by virtue of TAIC's incorporation in New York, and New Jersey does not have "a materially greater interest" in the dispute than New York. (*Id.* at 6–7 (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (1992)).) Additionally, TCS asserts application of New York law to this dispute would not be contrary to the public policy of New Jersey because courts have determined there is "no actual conflict" between New York and New Jersey law when it comes to compelling arbitration in the employment context. (*Id.* at 8 (quoting *Kozur v. F/v Atlantic Bounty, LLC*, Civ. A. No. 18-08750, 2020 WL 5627019, at *6 (D.N.J. Aug. 18, 2020)).) As a result, TCS argues the Dispute Resolution clause is a valid arbitration agreement under New York law based on New York courts' preference to encourage arbitration and hesitancy to interfere with contractual provisions seeking to direct disputes to alternative dispute resolution. (*Id.* at 8–9.) Specifically, TCS cites *Catz v. Precision Glob. Consulting*, Civ. A. No. 19-7499, 2021 WL 1600097, at *2 (S.D.N.Y. April 23, 2021), which it contends upheld as valid an arbitration clause with broad language similar to the one at issue here under New York law. (*Id.* at 9–10.) In a footnote, TCS also asserts that, were the Court to apply New Jersey law, the Agreement still contains a valid arbitration clause, as New Jersey's precedent in *Atalese* does not extend to

employment or severance agreements. (*Id.* at 10 n.3 (citing *GAR Disability Advocates, LLC v. Taylor*, 365 F. Supp. 3d 522, 528–29 (D.N.J. 2019)).)

Plaintiff's sur-reply contends TCS's appeal to the Governing Law and Interpretation clause is moot because TCS waived this argument by not raising it in its moving brief. (ECF No. 54-1 at 2–6.) Plaintiff argues that, as the moving party, TCS had the obligation to identify the governing law in this dispute and apply it to the facts. (*Id.* at 3.) Because it failed to do so, Plaintiff asserts he cannot be faulted for using New Jersey law to oppose the Motion, and TCS is attempting to belatedly marshal the choice-of-law provision for purposes of gamesmanship. (*Id.* at 5.) Plaintiff also points to instances in which he contends courts in this District declined to apply choice of law provisions by consent of the parties to use New Jersey law or due to waiver of this argument by the moving party, as he argues occurred here. (*Id.* at 5 n.10 (citing S*ud v. Ness U.S., Inc.*, Civ. A. No. 21-12330, 2022 U.S. Dist. LEXIS 100401, at *12 n.3 (D.N.J. 2022); *Rowen Petroleum Props., LLC v. Hollywood Tanning Sys.*, Civ. A. No. 08-4764, 2011 U.S. Dist. LEXIS 147886, at *13 n.8 (D.N.J. 2011); *Sluka v. Landun Uniforms, Inc.*, 383 F. Supp. 2d 649, 651 n.1 (D.N.J. 2005).) Nonetheless, Plaintiff also asserts there is no basis to apply New York law to this dispute, as (1) TCS fails to establish the dispute has a substantial connection to New York (*id.* at 10–11); (2) New Jersey has a materially greater interest in its resolution based on Plaintiff and TCS's connection to the state, as well as the execution of the Agreement in the state; and (3) application of New York law would be contrary to New Jersey's fundamental policy to protect its citizens' rights to access its courts and the right to trial by jury therein (*id.* at 13–15 (citing *Aguirre v. CDL Last Mile Sols., LLC*, No. A-3346-22, 2024 WL 762467, at *4–7 (N.J. App. Div. 2024))). Additionally, Plaintiff

argues TCS's citation to *GAR Disability* to support its view the Agreement is enforceable under New Jersey law is unavailing because that case dealt with a commercial contract. (*Id.* at 12–13.)

In response, TCS disputes that choice-of-law analysis may be waived under Third Circuit precedent and argues all of Plaintiff's purported authority is distinguishable. (ECF No. 58 at 3–4.) Moreover, TCS argues it did not waive the right to argue the Governing Law and Interpretation clause applies because it "attached a copy of the Agreement [containing the clause] to its moving papers" but did not see the need to "delve into state law regarding" the enforceability of the Dispute Resolution clause's language until it received Plaintiff's opposition. (*Id.* at 4.) TCS also reiterates its view that the choice-of-law analysis under New Jersey law favors applying New York law. (*Id.* at 4–5.) In particular, TCS asserts the *Aguirre* case cited by Plaintiff is inapposite because the New Jersey Appellate Division found the contract at issue was akin to a consumer contract of adhesion, despite occurring in the employment context, whereas the contract here was a severance agreement Plaintiff was not obligated to sign and had ample time to consider (with counsel if he so chose). (*Id.* at 5–6 (citing *Aguirre*, 2024 WL 762467 at *9*).) Additionally, TCS contends the court in *Aguirre* found New Jersey had a materially greater interest in the case because "the entire putative class lived in New Jersey," and the circumstances of their employment, signing of the relevant agreements, and alleged injuries occurred in the state, but Plaintiff seeks to represent a nationwide class he alleges "reports" to New Jersey, despite the fact that most of TCS's decisionmakers work in New York. (*Id.* at 6.) Regardless, TCS contends both New York and New Jersey law would find the arbitration clause is enforceable. (*Id.* at 6–7.)

### 1. Choice of Law

Typically, "[i]n evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state[.]" *Nuzzi v.*

*Aupaircare, Inc.*, 341 F. App'x 850, 852 (3d Cir. 2009) (quoting *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009)); *see also Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017) ("In diversity cases such as this one, we look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause."). However, Plaintiff contends TCS waived the ability to advocate for a particular state's law entirely by not raising the issue in its moving brief. (ECF No. 54-1 at 2–6.)

Plaintiff is correct that choice-of-law issues are waivable under Third Circuit law (and, indeed, under the law of "[a]ll U.S. Courts of Appeals to have addressed the issue").[6] *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014); *see also Patterson v. Aetna Life Ins. Co.*, 763 F. App'x 268, 271 n.5 (3d Cir. 2019) (finding waiver of choice-of-law issues where party "neither argue[d]" for application of state law "nor invoke[d] the choice of law clause" of contract).

Therefore, the question before the Court becomes whether TCS did waive the choice-of-law issue. The Court concludes it did not. Outside of instances where parties in a contractual dispute fail to reference a choice-of-law clause and refer to another state's law in their arguments, *see, e.g.*, *SJ Abstract v. Old Republic Nat'l Title Ins. Co.*, Civ. A. No. 21-1334, 2021 WL 4847803, at *2 n.2 (E.D. Pa. Oct. 14, 2021) (finding waiver of Minnesota choice-of-law clause where parties "implicitly agreed that Pennsylvania law applies" through arguments); *Abate v. Wal-Mart Stores E., L.P.*, 503 F. Supp. 3d 257, 265 n.1 (W.D. Pa. 2020) (finding Arkansas choice-of-law clause waived as parties "discuss only Pennsylvania law"), courts in this Circuit have found choice-of-

---

[6] TCS's primary authority for the contrary view, *Shannon v. B.L. England Generating Station*, Civ. A. No. 10-04524, 2013 WL 6199173 (D.N.J. Nov. 27, 2013), predates the Third Circuit's clarification in *Williams*, 765 F.3d at 316 ("Our Court has been inconsistent on this point. . . . Our review of the law in this area convinces us that parties may waive choice-of-law issues. Permitting waiver accords with the law of every other circuit. It also makes sense.").

law clause arguments waived when parties raise the issue much further in the litigation lifecycle than here, *see Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, Civ. A. No. 13-4663, 2019 WL 13182410, at *1 n.1 (E.D. Pa. Nov. 8, 2019) (finding choice-of-law argument waived when raised "on the eve of trial" following six years of litigation); *Farrington v. Freedom Mortg. Corp.*, Civ. A. No. 20-4432, 2022 WL 16552779, at *7 (D.N.J. Oct. 31, 2022) (finding choice-of-law argument based on contractual clause waived when raised only after motion to dismiss and answer and more than a year of discovery on claim); *Safarian v. Am. DG Energy Inc.*, Civ. A. No. 10-6082, 2015 WL 12698441, at *6 (D.N.J. Nov. 24, 2015), *aff'd*, 729 F. App'x 168 (3d Cir. 2018) (failing to raise choice of law issues until after close of discovery, preventing plaintiff from obtaining evidence on issues, constituted waiver). Here, the parties have engaged in only preliminary discovery, and the Court has not made any rulings regarding the merits of the case.

Moreover, the principle behind the doctrine of waiver is to prevent prejudice to the other party who may not have an opportunity to respond. *See Safarian*, 2015 WL 12698441 at *6 ("[T]he Third Circuit has held that whether an affirmative defense [such as choice of law] is waived will depend on whether the defense was raised at a pragmatically sufficient time and whether the plaintiff was prejudiced in his ability to respond." (internal citations omitted)). Here, Plaintiff requested and received the opportunity for further briefing on this issue. (ECF Nos. 48, 49.) Discovery in this matter is also ongoing, and if the Court found questions of fact prevent it from determining the proper law to apply, it could deny the Motion to allow for discovery on that issue. *See Safarian*, 2015 WL 12698441 at *6; *Blue Cross Blue Shield*, 2019 WL 13182410 at *1 n.1.

Therefore, the Court will evaluate the Governing Law and Interpretation clause of the Agreement under New Jersey's choice-of-law rules.

In New Jersey, a choice of law clause will ordinarily be upheld

> unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issues and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Instructional Sys.*, 614 A.2d at 133 (quoting Restatement (Second) of Conflicts of Laws § 187 (1969)); *see also Grandvue Manor, LLC v. Cornerstone Contracting Corp.*, 272 A.3d 36, 40–41 (NJ App. Div. 2022) (honoring contractual choice of New York law after Restatement analysis).

However, the Third Circuit has indicated courts conducting a New Jersey choice-of-law analysis should confirm there exists "a relevant, actual conflict between New Jersey and New York law" before proceeding to the Restatement test.[7] *Pharmacia Corp. v. Arch Specialty Ins. Co.*, No. 22-2586, 2024 WL 208146, at *2 (3d Cir. Jan. 19, 2024). Such a conflict arises "when the application of one or another state's law may alter the outcome of the case," *id.* (quoting *In re*

---

[7] The Court notes there is some inconsistency within federal and New Jersey case law as to whether to consider the existence of "actual conflict" between the law of the proposed states when dealing with a contractual choice-of-law provision. *Compare, e.g.*, *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys.*, 730 A.2d 843, 847–48 (N.J. 1999) (conducting Restatement analysis to reject choice-of-law clause without considering existence of actual conflict between states' laws); *Collins*, 874 F.3d at 184–85 (conducting Restatement analysis to affirm choice-of-law clause without considering existence of actual conflict between states' laws) *and Grandvue Manor*, 272 A.3d at 40–41 (same); *with Pharmacia*, 2024 WL 208146 at *2 ("Absent a relevant, actual conflict between New Jersey and New York law, we need not undertake a choice-of-law analysis or decide whether to enforce a choice-of-law provision."); *and Kramer v. Ciba-Geigy Corp.*, 854 A.2d 948, 958–59 (N.J. App. Div. 2004) (examining existence of actual conflict before reviewing Restatement factors). For the sake of completeness, the Court will follow the Third Circuit's example in *Pharmacia*, 2024 WL 208146 at *2.

*Accutane Litig.*, 194 A.3d 503, 517 (N.J. 2018)), determined on an "issue-by-issue basis," *Kramer*, 854 A.2d at 958 (finding no conflict between New York and New Jersey law on issue of conflicts of interest but applying New Jersey law over "the contractually chosen law" because of fundamental policy conflict).

### a.  Actual Conflict

Courts in this District have generally observed "that New Jersey and New York apply similar standards to determine the enforceability of arbitration agreements." *Rosenberg v. Hotel Connections, Inc.*, Civ. A. No. 21-4876, 2022 WL 7534445, at *5 n.5 (D.N.J. Oct. 13, 2022) (citing *Kozur*, 2020 WL 5627019 at *6; *Gold Lion Steel, LLC v. Global Merchant Cash, Inc.*, Civ. A. No. 21-10702, 2022 WL 596997, at *4 n.2 (D.N.J. Feb. 28, 2022)). However, some New Jersey courts have noted a divergence in approach from New York on issues relevant to the dispute at hand, namely, whether and in what circumstances an arbitration clause must contain language indicating "the parties expressly waived their right to seek relief in court." *Grandvue Manor*, 272 A.3d at 43 (citing *Atalese*, 99 A.3d at 309, 315–16). As the Appellate Division explained in *Grandvue Manor*, "[u]nlike New York courts, which perform an 'initial screening' to determine whether the parties generally agreed to arbitrate claims, New Jersey courts inquire into the substance of the arbitration provision" to ensure it gives adequate notice to consumers or employees when the contracting parties have unequal bargaining power. *Id.* (internal citation omitted); *accord Remicade*, 938 F.3d at 525 (noting New Jersey law requires "concrete manifestation" of intent to waive trial rights in employment and consumer contexts); *Montes v. Paymentus Grp., Inc.*, Civ. A. No. 24-7450, 2025 WL 1112981, at *5 (D.N.J. Apr. 14, 2025) (observing "New Jersey law . . . treats employment and consumer contracts differently than commercial contracts" and requires an arbitration clause "(1) identify the general substantive area [of] the arbitration; (2) reference the types of claims subject

to arbitration; and (3) explain the difference between arbitration and litigation"). At least one panel of the Appellate Division has identified this as a salient difference in the employment context. *See Aguirre*, 2024 WL 762467 at *5–6 (finding application of New York arbitration law, as contracted for in employment agreement, would be contrary to New Jersey's fundamental policy because New York law screens arbitration clauses "in general terms" and does not require express language to waive right to court process, whereas New Jersey law does).

TCS contends this trend in New Jersey arbitration law does not apply here because the Agreement is not a contract of adhesion, as Plaintiff was given the opportunity to review it and consult counsel, and, as a result, there is no daylight between New York and New Jersey law. (ECF Nos. 58 at 5–6, 7 (citing *GAR Disability*, 365 F. Supp. 3d at 530–31); 45 at 8 (quoting *Kozur*, 2020 WL 5627019 at *6).) However, New Jersey law requires closer scrutiny of the substance of arbitration clauses in employment matters than New York law does and likewise does not appear to require finding there was no negotiation possible. *See, e.g.*, *Remicade*, 938 F.3d at 525; *Atalese*, 99 A.3d at 315–16 (finding arbitration clause unenforceable because it failed to unambiguously inform parties "that there is a distinction between resolving a dispute in arbitration and in a judicial forum" based on precedent from employment context); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 951 (N.J. 2020) (applying principles articulated in *Atalese* to find arbitration clause in employment agreement enforceable that "briefly described an arbitration proceeding, defined the arbitrator's role, explained the effect of an arbitrator's decision, identified a specific arbitration organization . . . , and designated that organization's employment arbitration rules as the governing rules"); *Easterday v. USPack Logistics LLC*, Civ. A. No. 15-7559, 2021 WL 7629907, at *6–7 (D.N.J. June 30, 2021), *aff'd*, Civ. A. No. 15-7559, 2022 WL 855583 (D.N.J. Mar. 23, 2022) (remarking that, in *Skuse*, "the New Jersey Supreme Court [applied] *Atalese* in the employment context" and

finding arbitration clause failed to "clearly and unambiguously explain that Plaintiff is waiving his right to seek relief in court"); *accord Moon v. Breathless Inc*, 868 F.3d 209, 217–18 (3d Cir. 2017) (finding principles articulated in *Atalese* and related precedents applied to independent contractor agreement where plaintiff aimed to assert statutory rights).

Even if New Jersey law does require evaluating whether an employment-related contract is a contract of adhesion (though it appears not to), there is at least a disputed issue of fact on the degree to which TCS treated its severance agreements as negotiable. TCS's counsel states the Agreement was one of "nearly 200 severance agreements that were signed by a group of employees who had been terminated in September 2023." (ECF No. 31-3 ¶ 19.) The Sharma Declaration also indicates these agreements were standardized, as he "did not know that the severance *agreements* contained a binding arbitration clause."[8] (ECF No. 45-1 ¶ 6 (emphasis added).) Viewed in the light most favorable to Plaintiff, a jury could determine the Agreement was a "take-it-or-leave-it" proposition to recently terminated employees like Plaintiff. *See Aguirre*, 2024 WL 762467 at *9; *Marino*, 358 F.3d at 247.

Accordingly, the Court determines an actual conflict exists between New York and New Jersey law, necessitating an evaluation of the Restatement factors.

### b.  Substantial Relationship

TCS argues New York has a substantial relationship to the parties and transaction because its offices and executive leadership are located in New York, and its subsidiary TAIC (formerly a

---

[8] Indeed, in support of its view New York law should apply, TCS argues "the choice of law provision in Plaintiff's agreement is the same choice of law clause contained in every other severance agreement executed by the other employees who were terminated along with Plaintiff in September 2023." (ECF No. 45 at 7.) New Jersey courts have found similarity in terms across contracts indicates they were not a product of "sophisticated negotiation." *Aguirre*, 2024 WL 762467 at *9 (finding plaintiffs' contracts were likely contracts of adhesion in part because "the terms of the Agreements [do not] substantially differ among the plaintiffs").

defendant in this matter) is incorporated in New York. (ECF No. 45 at 6–7.) TCS contends concentration of senior leadership in the state creates a reasonable basis for applying New York law, as well as the fact that TCS operates nationwide and included the same choice-of-law clause "in every other severance agreement executed by the other employees" who were terminated around the country in September 2023, like Plaintiff. (*Id.* at 7.) Plaintiff contests TCS's assertion that it has a substantial relationship to New York because its statements about the location of its offices and executives are made in its briefing without evidentiary support and do not meet the summary judgment standard as a result. (ECF No. 54-1 at 11.) Plaintiff points to the email signatures listing the Edison Office in his correspondence with TCS's human resources employees regarding the execution of the Agreement (ECF No. 31-6), as well as the Sharma Affidavit, which indicates it was executed in Edison, New Jersey (ECF No. 45-1 at 4), to argue an issue of material fact exists as to whether TCS is in fact headquartered at the Edison Office (ECF No. 54-1 at 11).

It is undisputed TAIC is incorporated and has its principal place of business in New York, as pled in the Complaint and affirmed by TCS's Answer (filed when TAIC was still a defendant in this matter). (ECF Nos. 1 ¶ 4; 17 ¶ 4.) If TAIC were still a party to this dispute, this would likely be sufficient to demonstrate it had a substantial relationship to New York. *See Instructional Sys.*, 614 A.2d at 133 (finding chosen state had substantial interest because defendant headquartered there); *Aguirre*, 2024 WL 762467 at *5 (determining New York had substantial interest because defendants "are residents of that state"); *Januszewski v. Advance Auto Parts, Inc.*, Civ. A. No. 10-3794, 2012 WL 5465767, at *4 (D.N.J. Nov. 8, 2012) (finding substantial relationship to chosen state where "corporate headquarters are located" there).

However, it is also undisputed Plaintiff was employed by TCS, not TAIC, and TCS is currently the sole Defendant in the case. (ECF Nos. 17 ¶ 10 ("Defendants . . . admit that Plaintiff

was employed by TCS."); 30 (ordering dismissal of TAIC without prejudice).) Therefore, it is necessary to determine if TCS has a substantial relationship with New York, and, drawing "all justifiable inferences" in Plaintiff's favor, there appear to be questions of fact about what relationship TCS and this dispute have to New York. *Marino*, 358 F.3d at 247; *see also Januszewski*, 2012 WL 5465767 at *4 (considering parties' statements of fact in assessing substantial relationship for choice of law analysis on summary judgment); *Mabe v. OptumRx*, Civ. A. No. 3:17-01102, 2024 WL 3498353, *5 n.5 (M.D. Pa. July 22, 2024) (relying on parties' statements of fact to assess proper state law to apply based on choice of law provision). TCS is incorporated in Mumbai, India. *See supra* n.2. The only fact connecting TCS to New York is that TAIC is its "wholly-owned subsidiary." (ECF No. 10.) But, as discussed, there is no evidence TAIC had a role in Plaintiff's employment or termination, and Plaintiff points to records submitted by TCS which show TCS employees managed Plaintiff's termination and included the Edison Office in their email signatures, and the severance payment provided for in the Agreement lists the Edison Office address. (ECF Nos. 31-6; 32-1 at TATA-000163; 45-1 at 4.) TCS provides no evidentiary support for its contention that the true locus of decision-making for the company, much less this dispute, is New York, other than unsupported briefing statements about the location of key personnel. Under a summary judgment standard, this evidence is insufficient to determine whether New York has a substantial relationship to the dispute.[9] *See Guidotti*, 716 F.3d at 776.

---

[9] When no contracting party is domiciled in the chosen state, the Restatement (Second) of Conflict of Laws § 187 cmt. f (1971) indicates a substantial relationship may exist when the chosen state is "where performance by one of the parties is to take place or . . . this state is the place of contracting" as non-exhaustive examples. *See also, e.g.*, *Sempra Energy Sols., LLC v. Exec. Campus, LLC*, Civ. A. No. 10-02060, 2012 WL 503736, at *3 (D.N.J. Feb. 15, 2012) (finding substantial relationship where party did business in New York and described choice of law provision "material inducement to contract"). TCS fails to provide more than attorney statements about the former, and the record indicates New Jersey is the place of contracting. (ECF Nos. 31-6; 45-1 at 4.)

However, the resolution of this question is not necessary because, as discussed *infra*, applying the Agreement's Governing Law and Interpretation clause would violate a fundamental policy of New Jersey, and therefore the second Restatement exception applies.

### c. Contrary to Fundamental Policy of State with Materially Greater Interest

To determine which state has a "materially greater interest" for purposes of the second Restatement test, "New Jersey Courts focus on the dispute-related contacts or relationships with the relevant states."[10] *Rosenberg*, 2022 WL 7534445 at *4 (collecting cases and finding New Jersey did not have materially greater interest in dispute, despite contacts with state, because parties agreed to apply New York law, defendant served clients in New York, and "[m]ost importantly, [Defendant] was incorporated in New York"). Regarding the "fundamental policy" prong, the Third Circuit has explained "the nature of the policy itself and its relative importance must be considered," which involves determining whether a party makes "correct statements of New Jersey law, whether they applied on the facts of this case . . . [and] whether those policies were sufficiently 'fundamental' to justify setting aside the parties' selection of" another state's law. *Adler*, 2025 WL 1119925 at *13.

In *Aguirre*, the Appellate Division found the second Restatement exception necessitated applying New Jersey law to an employment dispute, despite the parties' choice of New York law

---

[10] The Third Circuit recently clarified that, "[t]o determine which state has a 'materially greater interest' in the application of its law . . . , New Jersey's choice-of-law rules . . . call for an examination into whether New Jersey has expressed a 'policy interest' in enforcing the protections of its own law regarding an issue over a contrary agreement by the parties," in addition to geographical ties. *Adler v. Gruma Corp.*, --- F.4th ----, No. 23-3177, 2025 WL 1119925, at *11 (3d Cir. Apr. 16, 2025) (quoting *Instructional Sys.*, 614 A.2d at 134–35) (finding district court improperly rejected plaintiff's argument parties' "contractually chosen law violates New Jersey's public policy regarding arbitration"). However, neither party raises a policy issue here, outside of the "fundamental policy" debate in the latter part of the test.

in their employment agreements. *Aguirre*, 2024 WL 762467 at *5–6. There, the Appellate Division found New Jersey had a materially greater interest in the dispute because the plaintiffs lived and worked in New Jersey, the warehouse where plaintiffs had worked for the employer defendant was in New Jersey, the employment agreements were executed in New Jersey, and the plaintiffs brought claims under New Jersey law in a New Jersey court. *See id.* at *5. Conversely, the only connection to New York was that several defendants resided there. *See id.* The court also found applying New York law would violate a fundamental policy of New Jersey in the employment context, despite both states strongly favoring arbitration. *See id.* Looking to New Jersey's Constitution, the Appellate Division found the state has "a long standing policy of protecting the right to access its courts," *id.* at *6 (citing N.J. Const., Art. I § 9), as epitomized by the New Jersey Supreme Court's instruction in *Atalese* that "an enforceable arbitration clause 'at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute,'" *id.* (quoting *Atalese*, A.3d at 315–16). But "[c]ontrary to New Jersey law in this respect, New York law does not specifically require an arbitration clause explain that agreement thereto involves waiving the right to a jury trial." *Id.*

The facts here closely resemble *Aguirre*. Plaintiff lives in New Jersey and was employed by TCS at its New Jersey office. (ECF No. 1 ¶¶ 1, 6–8.) Plaintiff communicated with New Jersey-based employees of TCS about the Agreement and to submit the signed Agreement. (ECF Nos. 31-6; 45-1 at 4.) Plaintiff claims a violation of the NJ WARN Act, brought in a New Jersey federal court under diversity jurisdiction. (ECF No. 1 ¶¶ 3–4, 57–86.) TCS has even less of a connection to New York than the defendants in *Aguirre* because it is a foreign corporation; as discussed, its only tie to New York is the incorporation of TAIC, which is no longer a defendant in this litigation. *See supra* Part III.A.1.b. TCS argues New Jersey's interest in this dispute is not materially greater

than New York's because "TCS has offices in New York (and elsewhere) and its main American subsidiary, TAIC, is incorporated in New York," citing *Rosenberg* for support (ECF No. 45 at 7–8), but this argument is unavailing for two reasons. First, TCS misconstrues the court's reasoning in *Rosenberg*, which credited the defendant's incorporation in New York as the "[m]ost important" reason New Jersey's interest was not materially greater than New York's. *Rosenberg*, 2022 WL 7534445 at *5. Second, and again, TCS attempts to import TAIC's connections to New York into this dispute, despite agreeing to its dismissal as a party, and without providing any concrete connection between TCS and New York beyond unsupported statements that key personnel work in the state.[11] *See supra* Part III.A.1.b. On this record, the Court finds New Jersey has a materially greater interest in this dispute than New York.

The Court also finds enforcing the Governing Law and Interpretation clause would violate New Jersey's fundamental policy of protecting access to the courts and its citizens' right to a jury trial. *See Aguirre*, 2024 WL 762467 at *6; *supra* Part III.A.1.a. As previously discussed, New York and New Jersey law diverge in their treatment of arbitration clauses in the employment context, with New Jersey courts requiring an explicit disclaimer of the employee's right to pursue covered claims in court. *See supra* Part III.A.1.a. As the Appellate Division noted in *Aguirre*, "[p]rotecting individuals' rights to sue and to a jury trial, and ensuring any waiver of those rights

---

[11] TCS also claims there is a distinction between the putative class in *Aguirre*, where the court found New Jersey had a materially greater interest in the dispute than New York, and the class alleged here, because there the court found the entire putative class lived, worked, and suffered injuries in New Jersey, whereas Plaintiff's purported class includes any terminated employee who reported to the Edison Office nationwide. (ECF No. 58 at 6 (citing *Aguirre*, 2024 WL 762467 at *5).) But again, TCS provides only unsupported assertions about the location of its current and former employees, and the documents it provided in support of its position raise at least a disputed issue of fact as to whether the layoff that affected Plaintiff and potential class members was managed from the Edison Office. (ECF Nos. 31-6; 45-1 at 4.) The Court cannot find New York's interest to be materially greater than, or even equivalent to, New Jersey's on this record.

is knowing, intelligent, and voluntary are unquestionably fundamental policies of New Jersey," particularly when the parties are not "sophisticated." *Aguirre*, 2024 WL 762467 at *6, *9. This fundamental policy is grounded in the New Jersey Constitution and has been affirmed by the New Jersey Supreme Court and federal courts interpreting New Jersey law in the employment context. *Id.*; *Remicade*, 938 F.3d at 525; *Atalese*, 99 A.3d at 315–16; *Skuse*, 236 A.3d at 951; *Easterday*, 2021 WL 7629907 at *6–7; *Moon*, 868 F.3d at 217–18; *see also Adler*, 2025 WL 1119925 at *13 (instructing courts to consider "the nature of the policy itself and its relative importance" in assessing whether a claimed state policy is "fundamental"). Therefore, the Court finds the requirement that an employee must knowingly disclaim his or her right to pursue claims in court for an arbitration clause to be enforceable is a fundamental policy of New Jersey that would be violated by honoring the choice of New York law in the Governing Law and Interpretation clause. Accordingly, the Court will evaluate the Motion under New Jersey contract law.

## 2. Enforceability Analysis

Having determined New Jersey law applies, the Court will assess whether the Dispute Resolution clause constitutes an enforceable agreement to arbitrate under New Jersey law.[12] TCS contends it does, largely because the Agreement was not a contract of adhesion, as discussed *supra*. (ECF Nos. 45 at 10 n.3; 58 at 7.) TCS relies only on the decision of a court in this District in *GAR Disability*, 365 F. Supp. 3d at 528–29, to support this contention. (*Id.*) TCS also contends that,

---

[12] The parties do not appear to dispute Plaintiff's claims would fall within the arbitration clause if valid and enforceable; though TCS maintains that rights of action under the NJ WARN Act may be waived through a valid separation agreement, it does not ask the Court to resolve this question in this Motion. (ECF No. 31-2 at 7 n.3.)

even if *Atalese* and its progeny apply to employment agreements, the Agreement here is a severance agreement, which makes it distinct and less compulsory in nature. (*Id.*)

Plaintiff argues the Dispute Resolution clause did not sufficiently inform him that arbitration would waive his right to bring his statutory claims in court and is therefore unenforceable under New Jersey law, as discussed *supra* Part III.A. (ECF No. 43 at 3–6.) Specifically, Plaintiff contends New Jersey law requires an arbitration provision indicate the plaintiff is "waiving her statutory right to seek relief in a court of law" or otherwise acknowledge the individual is relinquishing rights associated with bringing a lawsuit, such as a jury trial, in a "clear and unambiguous" manner. (*Id.* at 6–7 (quoting *Atalese*, 99 A.3d at 309; *Vill. Courtyard Condo.*, 2024 N.J. Super. Unpub. LEXIS 1184 at *5).) Plaintiff contrasts the language in the Dispute Resolution clause[13] with that in an agreement to arbitrate[14] TCS successfully enforced under New Jersey law in this District to argue TCS knows how to craft a valid arbitration agreement under New Jersey law and failed to do so here. (*Id.* at 7–8 (citing *Mahanandigari*, 2017 U.S. Dist. LEXIS 93739 at *8).) Plaintiff also contends *GAR Disability*, on which TCS relies, is inapposite because it dealt with the arbitration provision of "a commercial Asset Purchase and Sale

---

[13] "The Parties agree that . . . any surviving claims regarding your employment with or separation from the Company shall be resolved by binding arbitration between the Parties." (ECF No. 43 at 4 (quoting ECF No. 31-4 ¶ 13).)

[14] "I UNDERSTAND THAT PROMISES BY THE COMPANY AND BY ME TO ARBITRATE DIFFERENCES, RATHER THAN LITIGATE THEM BEFORE COURTS OR OTHER BODIES, PROVIDE CONSIDERATION FOR EACH OTHER. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL." (*Id.* at 8 (quoting *Mahanandigari*, 2017 U.S. Dist. LEXIS 93739 at *8).)

Agreement," rather than a contract related to employment. (ECF No. 54-1 at 12–13 (citing *GAR Disability*, 365 F. Supp. 3d at 528–29).)

The New Jersey Supreme Court has made clear that, "[w]hen the waiver of rights is an agreement to arbitrate employment disputes, [there must be] 'some concrete manifestation of the employee's intent as reflected in the text of the agreement itself.'" *Skuse*, 236 A.3d at 950 (quoting *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1103 (N.J. 2003)). In *Atalese*, the New Jersey Supreme Court stated that, while there is "no prescribed set of words [that] must be included in an arbitration clause to accomplish a waiver of rights," the language used must be "clear and unambiguous" that, in choosing to arbitrate, the parties are forgoing resolution "in a court of law." *Atalese*, 99 A.3d at 447. That said, most employment-related arbitration clauses enforced by federal and state courts applying New Jersey law clearly disclaim the right to seek relief in court in favor of the agreed-upon arbitration. *See, e.g.*, *Skuse*, 236 A.3d at 943 (compelling arbitration where contract provision stated all claims "are subject to arbitration pursuant to the terms of this Agreement and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR JURY DECIDE ANY COVERED CLAIMS."); *Tharpe v. Securitas Sec. Servs. USA, Inc.*, Civ. A. No. 20-13267, 2021 WL 717362, at *3 (D.N.J. Feb. 24, 2021) ("The acknowledgment form here satisfies those legal standards [established in *Skuse* and *Atalese*]. . . . Th[e] Agreement [referred to in the acknowledgment form] clearly states that '[i]t is an **arbitration agreement**' and that employment disputes will be resolved 'by Arbitration instead of in a court of law.'" (third alteration and emphasis in original)); *Arafa v. Health Express Corp.*, 233 A.3d 495, 509 (N.J. 2020) ("As required by this Court, the . . . employment agreements provide that plaintiffs 'voluntarily agree[d] to waive any right to a trial by jury in any suit filed hereunder,' and to 'adjudicate any dispute pursuant to [the arbitration

agreement].'" (second and third alterations in original)). Absent such a clear distinction drawn in the terms between arbitration and court remedies, New Jersey courts do not compel arbitration. *See, e.g.*, *Aguirre*, 2024 WL 762467 at *9 (finding arbitration clause in agreements unenforceable because "they do not define arbitration and lack the crucial disclosure that it will replace litigation or a jury trial"); *Easterday*, 2021 WL 7629907 at *7 (refusing to compel arbitration because "the [arbitration] clause does not explain that arbitration is a replacement for judicial relief and that, by subjecting certain claims to arbitration, Plaintiff would be giving up his right to pursue those claims in a court of law").

The Dispute Resolution clause does not meet the standard required by New Jersey courts. *See id.* The Court need not reiterate the support for its conclusion, now made several times in this Opinion, that the requirements of *Atalese* apply to employment-related contracts. While TCS claims a severance agreement is of a different kind than an employment contract, the text of the Dispute Resolution clause belies this supposed distinction, as the Agreement purports to apply to "any surviving claims *regarding your employment with or separation from* the Company[.]" (ECF No. 31-4 ¶ 13 (emphasis added).) The Dispute Resolution clause does not explain that the arbitration process to which the parties are agreeing will be in lieu of judicial relief, including the right to a jury trial. (*Id.*) The clause does briefly mention the parties may "resort to a court for emergency equitable relief . . . pending arbitration" on limited categories of claims. (*Id.*) But this passing reference does not clearly and unambiguously explain to Plaintiff that arbitration will serve as a full substitute for his constitutional and statutory right to access a court of law on the merits of his claims. *See Atalese*, 99 A.3d at 447.

Because the Dispute Resolution clause fails to reasonably inform Plaintiff he is agreeing to arbitrate all covered claims in lieu of pursuing them in a court of law, it cannot establish mutual

assent to arbitrate his NJ WARN Act claim. *See Skuse*, 236 A.3d at 948. Accordingly, TCS's Motion to Compel Arbitration is **DENIED**. The Court therefore will not address the parties' waiver arguments.

## IV.    CONCLUSION

For the reasons set forth above, and for good cause appearing, TCS's Motion to Compel Arbitration (ECF No. 31) is **DENIED**. An appropriate order follows.


Date: May 28, 2025                                  */s/ Brian R. Martinotti*

                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**